241 So.2d 122

**STATE**

v.

**William Earl JENKINS.**

**3 Div. 68.**

Court of Criminal Appeals of Alabama.

Nov. 10, 1970.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

B. F. Lovelace, Public Defender, Brewton, for appellee.

ALMON, Judge.

William Earl Jenkins sought his release from Holman Prison in Atmore by filing a petition for a writ of habeas corpus in the Circuit Court of Escambia County. He alleged that he was being illegally detained because of an unlawful forfeiture of "good time" which had accrued to him under Tit. 45, § 253, Code of Alabama, 1940, as amended. This act provides that each prisoner who has been convicted and sentenced to confinement "in the penitentiary, or at hard labor for the county, for a definite

or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence" of a set number of days for each month depending on the length of the sentence.

After a hearing, the trial judge granted the relief sought, discharging the petitioner. The State brings this appeal. Tit. 15, § 369, Code of Alabama, 1940, as amended.

The record shows that on May 6, 1968, in the Circuit Court of Etowah County, petitioner was sentenced to two three year terms in the penitentiary for burglary and grand larceny, the sentences to run concurrently. On January 10, 1969, petitioner was transferred temporarily to the Marshall County jail to stand trial for an offense charged against him in that county. While there, he escaped and was later apprehended. Other than this transgression, the petitioner's prison record is good. Because of this escape the Central Classification Board, acting under a memo or directive from the Commisioner of the Board of Corrections, deducted nine months and eighteen days of his temporarily accrued "good time."

An escape is a violation of the rules and regulations of the State Board of Corrections and as such is a violation of "rules" as that term is used in Tit. 45, § 253, supra. In this case, those rules applied whether the petitioner was in the State penitentiary or in the Marshall County jail since, had he not escaped, his sentence would continue to run and he would have continued to earn "good time" while in the county jail.

The question to be decided then is not the power of the State Board of Corrections to take away petitioner's "good time" but rather the manner in which petitioner's "good time" was deducted.

For a bettter understanding of the trial court's ruling, we quote from the record:

"THE COURT:

"I'm going to grant this man's writ!. Mr. Dean, to correct you as to the law I refer you to a case as sighted by the Supreme Court of this State in the case of Taylor vs. State, [33 Ala.App. 449], 34 Southern 2nd, 506 and 507, where it says, ' * * * consequently as we understand the law, neither the Pardon and Parole Board nor the State Department of Corrections and Institutions has any authority to deprive him of his liberty. Under this law, the Director of the Department of Corrections and Institutions must review the prisoner's record.' Must, M-U-S-T, review the prisoner's record. 'And determine from that record and that record alone as to whether the prisoner should be released. The only discretion that we see that the Director has is when a prisoner's record is bad and in that case he is given the discretion of allowing good time deductions or not. Under the present circumstances we see no choice of using that discretion since the records show no violation of prison rules and exemplary life led by the petitioner while behind prison bars at Kilby.' Now, he has got to review this man's record, as I understand the rulings of the appellate courts of this state, on an individual basis. This clearly indicates that nobody, no administrative board or anybody else will have the right to set up a set of rules and operate in any such manner to penalize a man his good time unless that Commissioner of the State Prisons personally reviews this man's record, then, he has the discretion and he is the sole authority that has that discretion to take his good time away or not and from what you testified in this case today, this was not done. He did not review this individually?

"A. No, sir, it was not.

"THE COURT:

"I am going to grant his petition for habeas corpus and order him discharged."

The trial court, then, concluded that the relief sought should be granted because the Commissioner of the Board of Corrections had not personally reviewed petitioner's record. The trial court, in interpreting the opinion in Taylor v. State, 33 Ala.App. 449, 34 So.2d 506, relied upon specific language which is credited to this court. Despite the confusing language, a close reading of that opinion will reveal that these statements were not the courts. The quotation marks show that they were in fact part of a lengthy quotation from the appellant's brief in that case. Furthermore, the court in *Taylor,* supra, did not adopt these statements, but in fact held against the appellant in that case by affirming the trial court's denial of the relief he sought.

The trial court relied upon the case of Rockholt v. State, 41 Ala.App. 337, 132 So.2d 269, as re-affirming its interpretation of the *Taylor* case. However, the *Rockholt* case did not involve the question of the proper administrative method for deducting "good time", but rather, whether "good time" can be deducted from a prisoner who has received other forms of punishment for violating the prison rules against escape.

Our interpretation of these two cases is supported by the statutory scheme of Tit. 45, Chapter 7. A study of Chapter 7 shows that §§ 253, 254, and 255 were all approved on July 9, 1943, as part of one system for the control of the awarding of "good time" for observing the rules of the prison and for good conduct. § 253 explicitly states the method for accruing "good time" and the circumstances under which it can be earned. Under § 254 the Legislature has set out a procedure by which "good time" which has been forfeited by violating existing laws or prison rules can be restored.

By providing a procedure for restoration of forfeited "good time" after review of the prisoner's record by the Commissioner, the Legislature impliedly sanctioned the automatic deduction of "good time" from that accrued or to be earned without review by the Commissioner of the violator's record. This interpretation of Chapter 7 is even more plausible when it is considered that otherwise the burden would be cast on the Commissioner to review every violation of every prison rule in every correctional institution, no matter how small, before "good time" could be deducted. To interpret the cases and statutes otherwise would prevent the Commissioner from functioning as a managerial executive, which his position was obviously intended to be.

It is reasonable and entirely consistent with Chapter 7 that specific penalties (the reduction of "good time") can be attached to particular violations and upon a determination that a rule or law has been violated that penalty can be enforced without a personal review of the violator's record by the top executive of the correctional system. Then, as provided by § 254, if the warden in charge has reason to believe that the enforcement of a specific penalty in a particular case is unjust and that "good time" should be restored, he can recommend that the Comissioner review the prisoner's record and restore the forfeited "good time" if in the Commissioner's judgment it should be restored. We are of the opinion that this is the most reasonable interpretation of Chapter 7 and one which will aid in the efficient administration of the "good time" statutes.

For the foregoing reasons, the judgment of the circuit court is reversed and a judgment is here rendered remanding petitioner to the custody of the Warden of Holman Prison until discharged by due course of law.

Reversed and rendered.